## Case No. 6,242.

### HAWES v. WASHBURNE.

[5 O. G. 491; Merw. Pat. Inv. 244.]

Circuit Court, N. D. New York. June 22, 1872.

PATENTS—HOTEL-REGISTER — COPYRIGHT—LIABILITY OF USER—MEASURE OF DAMAGES.

1. A hotel-register of which the side margin is occupied with advertisements while the middle is left vacant to be filled with the names of guests, is the proper subject, if new, of a valid patent, belonging to the same class as patents for structures although it is not strictly a machine.

2. Such a register is not the subject of a copyright; neither is it true that a patent for it can be sustained only as a patent for a design. The device is novel although advertisements have been formerly inserted in books, directories, and newspapers, and placed upon fences and rocks by the wayside.

[Cited in Munson v. New York City, 3 Fed. 339.]

3. It was left to the jury to determine whether a hotel-register with advertisements placed upon the top and at the bottom of the pages is

[2] See 2 Duer, Ins. 683–787; 3 Kent, Comm. 284, note; 1 Arn. Ins. 574, and the cases cited.

an infringement of such a patent, and their verdict was for the plaintiff.

4. The keeper of a hotel who uses such a register is liable as an infringer. He is not the less liable although he did not intend to violate the rights of the patentee, and desisted when notified.

5. The plaintiff is entitled to recover as damages not only the profit he might have made upon the book if he had sold it, but what he might have obtained from those who advertised in it.

[This was an action at law by Charles L. Hawes against Washburne to recover damages for the infringement of letters patent No. 63,889, granted to plaintiff April 16, 1867, for an "advertising hotel-register."]

WOODRUFF, Circuit Judge (charging jury). At first impression, gentlemen of the jury, this case may seem to be one of small importance. At first view it looks as though the plaintiff had come into court and prosecuted his action at large expense to recover damages, and when these damages come to be stated by the witnesses, they seem to be small. But the counsel for the plaintiff rightly states to you that that is not a just view of the controversy. Patents are granted for useful inventions which in their details, or the subjects of which considered singly, are of very small value oftentimes, and yet the exclusive right to make and use them as an aggregate in the United States is of very large value. And when such a patent is infringed the plaintiff has no alternative; if he suffers one to infringe with impunity his neighbor will infringe; he again being suffered to do so with impunity, the thing will pass into use and all the benefit of the invention is lost. That you will see illustrated if you suppose the case of the needle used in the sewing-machine; they are sold at a very small price—a few cents; and if you suppose, as may well have been true, that the patentee of this needle received a royalty of one cent each for all the machine-needles which were used, and he found a party infringing, using that needle, why, apparently, he would be suing the individual to recover one cent, when, in truth, he was suing to establish a right which to him, if he was protected in it, was a certain fortune. The same may be true of other things. If this is a valid patent and it has been infringed, it may be the condition of this plaintiff. He calls upon the court to protect his rights in order that he may have the benefit of the exclusive privilege of using and selling, which the patent law gives him. So that the case is not to be treated lightly, however insignificant in its first development it might seem.

The patent, in terms, is called a "hotel-register," constructed to receive and actually receiving advertisements about its margin. It is patented not as a book in the ordinary sense of the word, as a publication or printed material, and therefore not the subject of copyright. The law of copyright has no re-

lation to it. It is a patent for a structure, not according to the common acceptation of the word "machine," and yet belonging to the same class of patents—a book devised for a useful purpose. The use that it serves does not enter into the patent as forming one of the patentable qualities or as important. It is the structure as a new device or medium of serving the purpose for which it is made; it is that that is patented; it is not the purpose that is patented; and it consists. as I understand it, of the materials constituting, when made up a book in form. with a space arranged for the reception of names of guests at the hotel, and, combined with it, advertisements adapted by their position in relation to the page provided for the names of the guests at the hotel to give publicity to the names and business of those who may desire to use it to promote success in their business. Now, it is as a structure that it is patentable, and it is only as a structure that the patent law secures it to the plaintiff; and the question whether it is patentable or not does not admit on this trial. I apprehend, irrespective of the alleged defence, prior knowledge or prior use of question. The patent itself, prima facie, imports novelty, and it is to be taken, prima facie, as securing to the patentee the right to make that structure. Whether he can use it or not may affect the question of damages if it is infringed.

Well, gentlemen, there are two principal questions on which the defendant relies to protect himself against responsibility for the use which he has made of a similar book. One is that the patent describes the structure of the plaintiff as one containing a page prepared and fitted for the reception of names of guests at a hotel, and with advertisements arranged about its margin. Whether the book which the defendants used infringed the plaintiff's patent, is to be ascertained by inquiring whether or not it effects the same result in substantially the same way and by the same means. If it does, then. gentlemen, it is an infringement. although the form that is given to it, adopted by the defendants, is different. Mere form, mere order of arrangement, if it makes no substantial difference in the operation and effect produced, is not of the substantial nature of the invention, and will not protect an alleged infringer. As very justly remarked by the counsel for the plaintiff. it rarely happens that any useful invention is made and patented that ingenious men—sometimes ingenious and sometimes men of not so much ingenuity, for very little ingenuity would obviously be necessary for this purpose—set themselves to work to see if they, who perhaps never thought of or never would have conceived the idea but for the success which they saw attend the ingenuity and industry of another, set themselves to work to see if they cannot, by changing the form and making some slight change, reach the same re-

sult. It is more frequently illustrated and better understood when machines are brought before the court and infringements alleged. Some mechanical equivalent is shown that accomplishes the same result in substantially the same way, and not precisely alike in form. And often machines which are alleged to be infringements are so unlike in their apparent construction and appearance that it would seem almost preposterous to call them the same machines, and yet when tested by men who understand the particular act to which they relate, are found to be mere changes of form. Gentlemen. with these views I shall submit to you the question whether the shifting of the advertisements from any particular arrangement, as described in the plaintiff's book, is or is not accomplishing the same result and in substantially the same way and by the same means. And in that view you will look at the results; look at what the patent contemplates, the purpose in view; the presentation to the eye of the guest, who is about to write his name in such proximity that he will readily discover it, the name of the dealer in this, that, or the other article who may have there advertised. And you then consider whether putting it at the top of the page, the bottom of the page. the side of the page, enlarging it or spreading it along the side—as the counsel for the plaintiff calls the margin—whether that is doing substantially the same thing, and whether it is communicating to the eye of the guest the advertisement that has been inserted in substantially the same way, and thus, by what are substantially the same means, giving the advertiser the benefit of his advertisement and the guest the benefit of the information thus communicated. If you find that it is substantially the same thing, although differing in form, then it is an infringement of the patent.

The second consideration urged upon your attention by the counsel for the defendants is that there was no novelty in this invention; that the same thing has been done before in substance. Well, gentlemen, advertising is not new, and we may assume or suppose it quite possible that street-fences. and the rocks and fences along our highways and railroads are covered with them, and that our newspapers are filled, and that books that are published have, either at the beginning or end, and sometimes both, advertisements, which it is supposed that those who read the books may look at. So directories are produced, published long since, containing entries along every page, either by interleaving or by running an advertisement along the bottom or the top through the whole book in expectation that those who had occasion to consult the book would see it. Men have been industrious, and perhaps ingenious, in contriving modes of circulating information of that sort; but do you find in anything that is produced here a combination of a page prepared for the insertion of names;

names that are to be written; names that are to be examined to see what strangers are in town, or the like, with an advertising page arranged in this way? It seems to me that, in this respect, the directory bears no more analogy to this hotel-register than a newspaper or than the idea of advertising in the fields and on the fences and the rocks that are along the lines of our railroads and highways. If the plaintiff did substantially the same thing as had been done before, then his patent is good for nothing. Taking an old device and simply and only putting it to a new use is not patentable. But when a new combination is made, bringing about a new result, as here if it be true, bringing to the eye of the strangers that visit the town or city where it is kept, by a new combination, a new result is produced in communicating to them information and furnishing the advertisers with a chance and probability that they may thereby obtain patronage, then it becomes patentable. It would be a new structure, a new arrangement of the material for advertising, a new mode for bringing things together that are sought to be brought together for a useful purpose. Now that, gentlemen, is all that I deem it necessary to say in regard to the legal questions involved in the claim of the plaintiff, on the one hand, to maintain his patent and the allegations and claims that are set up by way of defence. If, under these views, you find that this plaintiff is entitled to maintain the right proposed to be secured to him by his patent, and that the defendants have infringed those rights, you then come to the redress to which the plaintiff is entitled. And on that subject the rule is entirely specific. He is entitled to recover the actual damages which he has sustained. I have had occasion to intimate to the counsel in the progress of the trial, in ruling upon certain questions raised, that the use of the patented invention without the consent of the patentee is not justified by any innocence of design on the part of the defendants, and the plaintiff does not come here to punish. He comes here to say that his rights have been violated, and to ask at the hands of the jury that he be indemnified for his loss. There are a great many instances in which men are bound to make that indemnity when they themselves have been guilty of no degree of moral turpitude. They have been incautious. They have suffered themselves to use what they had no right to use, and they must look for indemnity in their turn, for they have no one to look to but to those by whose procurement they were led into this trespass of the party's right. So that you have a single and precise rule by which to be governed. What loss has fallen upon the plaintiff by the use made by the defendant of the alleged infringing book? For the ascertainment of that you have to inquire not merely how much profit the plaintiff would have made if he had sold the book which

he used. It is not necessarily the profit which the plaintiff might have made if he had sold the book which concludes the inquiry. One step is to be gained before that point is reached, and that is a conviction on your minds that, if the defendants had not used the book, the plaintiff would have made that profit. While on that subject we have this evidence, that at one time—how long a time I don't think the witness states—books of this description were made, as I think the witness stated. under this patent, and were used in Batavia; and he testified that such a book was used at this identical hotel.

Now, gentlemen, as men of good sense and judgment, you may consider whether it is probable that, if these books had not been gotten up and placed in this hotel, and used by these defendants, the plaintiff would and could have introduced his own book, and obtained in the ordinary course of his business, advertisements, and had the benefit which the party who did get up that book and did place it in that hotel probably gained. If you conclude, in view of the fact that this is a book in some general use, in view of the evidence that at Batavia it had been in use, and that in this hotel it had been in use; if you conclude that, had not these defendants received and used the books in question, the plaintiff would have had the benefit of that amount of profit by introducing there and in that hotel his own book; then, gentlemen, the amount of profit which he would so have realized is the just measure of his damages.

It appears by the evidence that two of the books were used there; the first book completely filled, and the second book used until the defendants received notice that it was a patented article; whereupon they discontinued its use. You will then have to consider in connection with those circumstances the complete use of the one book and the probability which I have suggested to you, that, had not that book been used, the plaintiff might have introduced one of his own, and then the partial use of the second, which involves, as you will perceive, the conclusion of all the advertisements and the reception of all the money, and just as effectually closing the door to the plaintiff to obtain those advertisements, whether the book was used one month or twelve, unless you conclude that he might have induced the same advertisers to pay him the same amount to insert their advertisements in his book and let the hotel take the book at an earlier date.

Now, gentlemen, I have said a good deal about what may seem to be a matter of no great importance. The amount of damages are small, must be small, in reference to the expenses and labor of litigation and the time of court, jury, witnesses, and parties spent in the investigation; but what is right to these parties must be done, whatever the result may be in that regard. The fact

that the defendants discontinued the use of the book is evidence that they were not intentionally setting the plaintiff at defiance or intentionally doing a wrong. If you find for the plaintiff it is for you to find the actual damages which he has sustained, and not damages designed as punishment to the defendants.

Mr. Macomber. I ask your honor to charge the jury that from the peculiar nature of this book, the peculiar relation which the landlord of the hotel sustained, having no interest in the advertisements, that he cannot, in a legal sense, be said to be the user of the book; that the persons using the book are, primarily, the advertisers through the means of the advertising agents who get up the book.

The Court. I cannot charge the first proposition, but must charge the contrary. The concluding sentence I do not regard as of any relevancy.

Mr. Macomber. I ask your honor also to charge the jury that the plaintiff's patent is not a combination, but is limited in its scope to the advertisements when they are on the page containing the names.

The Court. I have said what I deem to be proper on that subject. I decline to say further to the jury in that regard.

Mr. Macomber. I also ask your honor to charge the jury that, if the patent can be sustained at all, it must be under the act of 1861, as a patent for a design.

The Court. I decline.

Mr. Macomber. I desire to except to that portion of your honor's charge in which you instruct the jury that the patent was for a structure—in substance, that the patent was for a structure in the nature of a piece of mechanism, combining a means of advertising with a page for the insertion of names and dates. I also except to that portion of your honor's charge in which you substantially state to the jury that the method of advertising in directories in the various forms proved was not substantially the same mode.

The Court. I did not so instruct them.

Mr. Macomber. Then, of course, the exception goes for nothing. I understood your honor to express at least an opinion, and I desire an exception on that point.

The Court. If you insist upon that, sir, I will send for the jury and tell them that I did not express such an opinion or so instruct them. If you think the jury misunderstood me, as you seem to have done, I will send for them.

Mr. Macomber. No; I would not have your honor do that. Your honor will give me the benefit of an exception to your refusal to charge as requested.

The Court. I have noted them.

The jury rendered a verdict in favor of the plaintiff, and assessed his damages at $50.
[For other cases involving this patent, see note to Hawes v. Antisdel, Case No. 6,234.]